[No. 10,103.]

# THE PEOPLE v. C. G. T. SWENSON.

ARREST OF JUDGMENT IN CRIMINAL CASE.—If an indictment does not contain the particular circumstances of the offense when they are necessary to constitute a complete offense, the defendant may demur to the same, but if he fails to demur, he cannot move in arrest of judgment on the ground that the indictment does not conform to sections 950, 951 and 952 of the Penal Code.

IDEM.—If the indictment charges any offense, as an assault, the Court cannot arrest the judgment on the ground that the facts stated in the indictment do not constitute a public offense, even if judgment is pronounced for a higher offense.

INDICTMENT FOR ASSAULT TO MURDER.—An indictment, which charges that the defendant "did assault, with intent to commit murder, one Benjamin Cook," is sufficient to sustain a judgment for a felony, upon a verdict of guilty as charged in the indictment.

EVIDENCE OF MATTER A PART OF THE RES GESTÆ.—On a trial for an assault with intent to commit murder, evidence of a conversation between the parties immediately after the assault, which is perhaps a portion of the res gestæ, is admissible, but it is important, and should influence the jury, only in case the evidence with respect to the assault itself is conflicting, and if such conversation is erroneously ruled out by the Court, the judgment will not be disturbed if the bill of exceptions fails to show such conflict.

APPEAL from the County Court, County of San Joaquin.

The indictment charged C. G. T. Swenson with the crime of "an assault with intent to commit murder, committed as follows, to wit: The said C. G. T. Swenson, on or about the 26th day af January, A. D. eighteen hundred and seventy-four, at and in the county and State aforesaid, did assault, with intent to commit murder, one Benjamin Cook, then and there living, contrary to the form, force and effect of the statute," etc.

After a verdict of guilty, the defendant moved that the judgment be arrested, because the facts stated in the indictment did not constitute a public offense. The Court denied the motion. The bill of exceptions showed that several witnesses were sworn and examined concerning the transactions immediately connected with the shooting, but did not show what their testimony was, or whether they agreed as to the circumstances connected with the shooting,

or whether there was a conflict in their testimony. The bill contained the testimony of Cook, who was the person upon whom the assault was committed. His testimony tended to show that on the 26th of January, 1874, he drove a four-horse team into a cemetery, and was about passing through a gate at the north-west corner of the cemetery, when the defendant came to him and struck him, and he then knocked the defendant down. The defendant then came at him with a piece of board, and he took it away from him and threw it away. A man named Jenson then came up and held Cook, while the defendant kicked him. A boy named Seamond came up about that time with a double-barreled shot gun, which he placed against a fence-post. Cook got away and climbed into his wagon and commenced driving the team away, when the defendant took the shot-gun and said, I will shoot the G—d d—d s—n of a b—h and fired, discharging the contents into Cook's right arm. A man named Beaman then got into the wagon and drove the team toward Seamond's house, half a mile distant. Defendant and the boy struggled for the gun, and the other barrel was discharged. The defendant then followed the wagon, gun in hand, to Seamond's house. Cook, on cross-examination by defendant's counsel, was asked the question contained in the opinion. The defendant was sentenced to three years in the penitentiary, and appealed from the judgment, and from an order denying a new trial.

The other facts are stated in the opinion.

*Hopkins & Louttit,* for the Appellant, on the point that the Court erred in denying the motion in arrest of judgment, cited *People* v. *Vrias,* 12 Cal. 326; *People* v. *Schwartz,* 32 Cal. 165; *State* v. *Patrick,* 3 Wisconson, 812; *People* v. *Williams,* 35 Cal. 673, and *Nugent* v. *The State,* 19 Alabama, 545.

*John L. Love,* Attorney-General, for the People, argued that the *People* v. *Vrias,* 12 Cal. was not in point, and that the defect in the indictment was waived by a failure to demur.

By the Court, MCKINSTRY, J.:

By the indictment the defendant was accused "of the crime of an assault with intent to commit murder, committed as follows, to wit: The said C. G. T. Swenson, on or about, etc., did assault with intend to commit murder one Benjamin Cook."

The defendant could have demurred to the indicment on the ground "that it did not substantially conform to the requirements of sections 950, 951 and 952," if it did not contain the particular circumstances of the offense, and they were necessary to constitute the complete offense. But, having failed to demur he could not move in arrest of judgment on the ground that the indictment did not conform to the sections referred to. (Penal Code, 1,004, 1,185.) The defendant could not move in arrest on the ground that the facts stated in the indictment did not constitute a public offense, because the facts set forth did unquestionably constitute a public offense, to wit, an assault. According to the theory of defendant the indictment simply charged an assault. But the verdict was "guilty as charged in the indictment;" the Court therefore could not grant the defendant's motion, and refuse to enter any judgment.

The question which is presented to us is, whether the Court below was authorized to render the judgment which it did render.

The very gist of the higher crime is the intent to murder the person assaulted, and it is claimed that the language, "did assault with intent to commit murder, one Benjamin Cook," does not necessarily imply that the intent was to murder Cook. It would seem that the decided weight of authority in other States is against the sufficiency of such an indictment. But, considering the language of the Penal Code (section 1,404): "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor any error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right;" considering that an assault with intent to commit

murder on another than the person assaulted, cannot be; and considering that the act charged as the offense is distinctly set forth in such manner that a person of "common understanding" (Penal Code, section 959, subdivision 6) would know that it was intended to charge the defendant with the intent to murder the person whom he was accused of assaulting, we hold this indictment sufficient to sustain the judgment.

Again: The words charging the intent, taken in connection with the language which immediately precedes and follows them, and with the general nomination of the crime, " an assault with intent to commit murder "—a crime which can exist only where the intent is to murder the person alleged to have been assaulted—sufficiently show an attempt to allege the appropriate intent. They cannot be excluded as meaning nothing, but must be considered, at most, as a defective allegation. It is only when a quality material and necessary to the constitution of a crime, is altogether omitted, and not where such quality is imperfectly described, that a judgment will be set aside as not sustained by the indictment, and entered without authority of law; unless it be a case where the Court has no jurisdiction to enter the judgment at all.

The employment of moderate care in drafting indictments would render it impossible that questions like that above considered, should ever be presented to this Court.

The prosecuting witness having stated, in effect, that the defendant—after having wounded the witness—followed the wagon in which he was for a distance of half a mile, with the gun in his hand, was asked: " In front of Seamonds' house (the point to which defendant followed the witness) in the presence of Beamond and Seamonds, do you recollect defendant saying, 'If you want to have me arrested, send out an officer; I will be here?' And in answer to that do you recollect saying, 'No; I will not have anything to do with it. I am to blame?'"

The questions, inasmuch as they tended to elicit testimony which would establish the conduct of defendant immediately after the shooting (and perhaps a portion of the

*res gestæ*), and which would prove the impression made on the mind of the witness by his own conduct, should not have been objected to by the District Attorney. But while such testimony was admissible, it was important and should have influenced the action of the jury, only in case the evidence with respect to the transactions occurring at the time directly connected with the assault was conflicting. The bill of exceptions fails to show such conflict; and the presumption is that all the evidence explanatory of the errors assigned is contained in the bill.

Judgment and order denying new trial affirmed.

Neither Mr. Justice CROCKETT nor Mr. Justice RHODES expressed an opinion.