[Crim. No. 15646. Second Dist., Div. Five. Oct. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. GILBERT EDWARD ADAMS, Defendant and Appellant.

## COUNSEL

Hugh M. Brenner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bernard S. Kamine, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KAUS, P. J.—Defendant, Gilbert Edward Adams, and one Jimmie Lee Bills were charged by information with one count of robbery in viola-

tion of section 211 of the Penal Code. Defendant was also charged with two prior convictions, a 1960 robbery and a 1957 violation of section 503 of the Vehicle Code.

Jury trial was waived. The cause was submitted on the transcript of the preliminary hearing plus additional evidence introduced at trial. Defendant and Bills were both convicted of robbery in the second degree. Defendant was also found to have suffered the prior robbery conviction. No finding was made as to the prior Vehicle Code violation. Probation was denied. Defendant was sentenced to state prison.

Pursuant to rule 31(a) of the Rules of Court defendant was permitted to file a late notice of appeal.

## FACTS

The robbery victim, Fred Bluett, testified both at the preliminary hearing and at the trial. He arrived in Los Angeles from San Francisco at about 2 a.m. on October 9, 1967. There was a mix-up in his hotel reservations and he found himself without accommodations. He found a phone booth from which he intended to call other hotels. At the phone booth he met defendant and Bills. A conversation ensued; Bluett was told that defendant and Bills were having car trouble. Bluett agreed to help them get their car started if they would help him locate a motel. It was then about 3 a.m. The three men started walking down the street. Defendant suddenly put his arm around Bluett's neck, forced him to the ground and fell on top of him. Bluett was greatly frightened. He asked what defendant wanted and defendant replied that he wanted all of Bluett's money. Bluett could feel defendant going through his pockets. Bluett was rendered unconscious. He awoke in a pool of blood and found his wallet gone and the pocket in which it had been kept torn. Also missing were the contents of his wallet: about $50 in cash, four credit cards, his driver's license and miscellaneous identification.

Bluett estimated he was with defendant and Bills for five or ten minutes from the time he first encountered them until he lost consciousness.

At about 4 a.m. on October 9, 1967, Bluett gave police a general description of his assailants. He described them as Negro, wearing jackets and sports shirts, having neither particularly long nor particularly short hair, one being 5'9", the other 6'3" tall.

At about 4:30 p.m. October 9, 1967, defendant and Bills were arrested while shopping at Sears. Defendant had used a credit card belonging to Bluett to make his purchase. A check by store personnel revealed the card had been stolen. A search of defendant's person in-

cidental to his arrest produced additional credit cards and identification belonging to Bluett.

On October 10, 1967, Bluett attended a lineup. Before being summoned to the police station, Bluett had been told that two men closely resembling the description he had given police had been apprehended using his credit card. The police had not told him where in the lineup these men would be standing, nor even that they would be in it, but he assumed they would be there.

The lineup consisted of six men, all Negro. Five of them were about 5'9" or 5'10"tall. Only defendant was over 6' tall. Defendant and Bills occupied the middle two positions in the lineup. They wore white shirts. None of the other men in the lineup wore white shirts. A photograph of the lineup was taken and was introduced in evidence by the defendants. A public defender was present at the lineup.[1] The police officer who arranged the lineup testified that an attempt was made, pursuant to a standing department rule, to have the lineup composed of persons of the same size, height and race to the extent possible.

Bluett identified defendant and Bills as his assailants at the lineup, at the preliminary hearing and again at the trial.

At about 10 a.m. October 10, 1967, Bills had a conversation with Officers Brown and Barrett, after having first been advised of his constitutional rights. The substance of this conversation was received in evidence at the trial against Bills only. Bills also took the stand and testified at the trial, as did defendant.

■ On appeal defendant contends that the lineup was unfair, (*Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *People* v. *Caruso,* 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]) that the admission of Bills' extrajudicial statements violated the rules laid down in *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620] and *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], and that the evidence was insufficient to support the verdict.

The first two contentions share a common defect: no objections were raised below and the points may not be considered for the first time on appeal. With respect to a possible *Bruton-Aranda* problem, the issue was brought to the attention of defendant's counsel by the trial court. Counsel stated that he did not believe that Bills' statements implicated defendant and declined to object. When counsel later objected to elabo-

---

[1]The public defender's office represented both defendants until after the preliminary hearing.

ration upon the statements during cross-examination of Officer Brown by counsel for Bills, the objection was sustained on *Aranda* grounds.[2]

With respect to the lineup, as noted, evidence was adduced below relating to the difference in height between defendant and the other participants, the fact that defendant and Bills stood adjacent to each other in the center of the group and the fact that they were the only ones wearing white shirts. No objection was raised, however, as to the admissibility of either the lineup identification or those made at the preliminary hearing and trial. Rather the defense strategy appeared to be to impeach the credibility of the identification not only by demonstrating the suggestive nature of the lineup, but by stressing the short period of time in which the victim had the opportunity to observe his assailants; and the fact that the victim had been drinking earlier in the evening. Defendant cannot complain because that strategy proved unsuccessful. When defendant agreed to have the court consider the transcript of the preliminary hearing, he, in effect, waived any objection he might have raised with respect to the admissibility of the lineup identification and its fruits.[3]

■ With respect to the contention that the evidence is insufficient to support the verdict, defendant relies upon *People* v. *Russell,* 118 Cal. App.2d 136 [257 P.2d 39]. He would apparently read that case to preclude conviction for robbery whenever a victim was rendered unconscious and remained so while his property was taken, unless an eyewitness saw the actual theft. In *Russell,* however, the victim, who had been drinking apparently did not know whether he had been robbed or not. That was not true in the case at bar. Although Bluett admitted he had been drinking in San Francisco prior to his flight to Los Angeles, he had not had anything to drink for more than one hour prior to the incident in question and testified that he was coherent, could walk straight and could take care of himself. Moreover there was no question in his mind that he had been robbed and he knew precisely what items of property had been taken from him. The evidence was more than sufficient to support the verdict.

■ In his notice of appeal defendant claims that known perjured testimony was used against him. His appointed counsel, understandably, has not chosen to pursue the point. Defendant undoubtedly had reference

---

[2]The Attorney General argues that the *Bruton-Aranda* rule does not apply where the defendant whose statement has been admitted in evidence, testifies and thereby subjects himself to cross-examination by his codefendant. That argument failed to prevail in *In re Hill,* 71 Cal.2d 997, 1008-1013 [80 Cal.Rptr. 537, 458 P.2d 449].

[3]*Wade* and *Gilbert* would be inapposite in any case in view of the presence of counsel.

to the fact that Bills, on direct examination, implicated him, but on cross-examination completely reversed himself and exculpated defendant. The trier of fact who heard both versions of Bills' testimony not only found the first version to be true, but indicated his belief that the second version was the result of intimidation of Bills by defendant during a short intervening recess, and directed the district attorney to look into the possibility of prosecuting Bills for perjury. Defendant can hardly rely upon these facts to reverse his conviction.

The judgment is affirmed.

Stephens, J. and Aiso, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1969.