Filed 6/24/14  P. v. Robinson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B250815 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA125118) |
| v. | |
| RASHAD ROBINSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John T. Doyle, Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant Rashad Robinson of two counts of second degree robbery. (§ 211.)[1] The trial court imposed a two-year state prison sentence. In this appeal, defendant contends that his convictions must be reversed because "[t]he evidence was insufficient [because] it did not reveal either of the takings were accomplished by means of force or fear." We disagree and therefore affirm the judgment.

# STATEMENT OF FACTS

Defendant committed the first robbery on September 18, 2012.[2] At approximately 12:40 p.m. that day, Irma Lima was walking toward a Food 4 Less market. Lima saw defendant leaning against a pillar, staring at her. Lima walked in front of him, proceeding to where the shopping carts are kept. Lima wore a gold chain with a crucifix around her neck. As Lima began to take a shopping cart, defendant grabbed her "from behind." She "felt like his finger was in [her] lip. And then [she] felt the tug." Defendant quickly took the gold chain from around Lima's neck. He "scratched" her and Lima felt "his fingers" "really going deep on [her] neck." The scratch on her neck left a mark that remained for "[a]bout a week." Lima was surprised and "a little" afraid. After taking Lima's gold chain, defendant quickly fled.[3]

---

[1]     All statutory references are to the Penal Code.

[2]     All subsequent dates refer to 2012.

[3]     Defense counsel's cross-examination touched only briefly upon the forcible taking. Lima answered "yes" to the following three questions defense counsel posed: (1) "And while you're getting a [shopping] cart, you feel a hand you said one finger touches your lip; is that right?"; (2) "And you feel a tugging motion?"; and (3) "And was it very quick, the pull of your chain?"

Defendant committed the second robbery on September 23. At approximately 11:20 a.m., Soccoro Estrada, accompanied by her teenage daughter Guadalupe Campos, stopped at a voting table in front of a Food 4 Less market, the same market where the first robbery had occurred. Estrada, who wore a gold necklace with a pendant, intended to change her voting address. Estrada testified that as she bent over the table to complete the requisite form, defendant grabbed her, placed his fists "up to her neck area under her chin . . . about two inches apart," cut the chain to her gold necklace, took the jewelry, and fled. Estrada suffered bruising to her neck and a "little" scratch on one hand. She felt "very frightened" during the incident.

Campos testified that as her mother was signing a paper, defendant "grabbed [her] and pushed her . . . to the window" of the store, took her necklace and ran off.

A videotape of the Estrada robbery was introduced into evidence and played during the prosecutor's closing argument. The videotape shows defendant grabbing Estrada, pushing her up against the window of the store, taking the necklace, and fleeing.[4]

The defense presented no evidence.

The jury was instructed about the elements of robbery and the lesser included offense of grand theft from the person. (CALCRIM Nos. 1600 & 1800.) In particular, the jury was told: "Force more than the force necessary to accomplish the taking of the property is necessary for a robbery conviction."

In closing argument, defense counsel primarily argued that the People had not proven beyond a reasonable doubt "that [defendant] took these women's

---

[4] On our own motion, we augmented the record on appeal to include the superior court file containing the videotape. (Cal. Rules of Court, rule 8.155(a)(1)(A).) We have viewed the videotape.

3

necklaces" but then added: "[Whoever] took the necklaces, whether one or more than one person, what they did was commit . . . a grand theft person because there was no fear and no more force [than] was necessary to snatch the necklace."

## DISCUSSION

In regard to each robbery, defendant contends that he "used no more force than was necessary" to take each victim's necklace from around her neck. We disagree.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) The actual degree of force used is immaterial. (*People v. Jones* (1992) 2 Cal.App.4th 867, 871.) All that is required is that the force "must be a quantum more than that which is needed merely to take the property from the person of the victim, and [that] is a question of fact to be resolved by the jury[.] [Citations.]" (*People v. Wright* (1996) 52 Cal.App.4th 203, 210.) Stated another way, "the force need not be of an extreme character. Thus, even a snatching may be robbery if it is forcible, as by tearing something attached to clothing, or knocking an object out of a person's hands. [Citation.]" (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 99, p. 137.) In contrast, "[i]f the taking is by a *secret* picking of a pocket, or by a *hasty* snatching of a purse without resistance, the crime is only [grand theft] from the person[.]" (*Ibid.*, italics added.)

In determining whether substantial evidence supports the jury's implied findings that defendant took property by force from each victim, "we must view the evidence in the light most favorable to the People . . . and we must presume in support of the judgment the existence of every fact the trier of fact could

4

reasonably deduce from the evidence.  [Citation.]" (*People v. Roberts* (1976) 57 Cal.App.3d 782, 787.)

*People v. Roberts, supra,* 57 Cal.App.3d 782 is instructive in considering defendant's contention.  There, the defendant approached the victim from the rear as she removed her keys from her purse.  The defendant "'grabbed [her] handbag[,] jerked it right down and snapped it off the handle.'" (*Id*. at p. 785.)  On appeal, the defendant contended that "'the purse snatch was accomplished in such a short space of time that the requisite force [required for a] robbery did not exist.'" (*Id*. at p. 787.)  The reviewing court rejected the contention, reasoning that "the evidence that the purse was grabbed with such force that the handle broke supports the jury's implied finding that such force existed." (*Ibid*.)

By a parity of reasoning, substantial evidence supports the jury's implied findings that defendant took each victim's necklace by force.

Lima testified that defendant approached her from behind, put his fingers on her neck so deeply that he left a scratch that remained for a week, tugged the gold chain she was wearing until it broke, took the chain, and fled.  Because defendant applied enough force not only to injure Lima but also to break the chain so that he could immediately flee with it, he used enough force to sustain a robbery conviction.  (See *People v. Jones, supra,* 2 Cal.App.4th at p. 871 [although the victim sustained only minor injuries, "the inference that force was used is compelling.  The degree of force is immaterial."].)

Estrada testified that defendant approached her from the rear, grabbed her, placed his fists around her neck, cut the chain to her necklace and fled.  In addition, Campos, Estrada's daughter, testified that before defendant took the necklace, he pushed her mother up against the window of the store.  Taken together, the testimony of these two witnesses is more than sufficient to sustain the jury's implied finding that defendant took the jewelry by force because he physically

5

restrained Estrada before he cut and took the necklace. (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708-1709 [element of force established where defendant first shoved the victim and, then, in a separate motion, snatched a purse from her shoulder].)

To a large extent, defendant's contrary arguments are nothing more than requests that we reweigh the evidence and substitute our judgment for that of the jury. We decline to do so. "Due process of law does not require a reviewing court to reweigh evidence or redetermine witness credibility. In fact, it would distort the process if this court, reading a 'cold' record, substituted its judgment for that of the trier of fact who saw and heard the live witnesses. Our role is to determine the legal sufficiency of the found facts and not to second guess the reasoning or wisdom of the fact finder." (*People v. Lashley* (1991) 1 Cal.App.4th 938, 946.)

Defendant also urges that the evidence is insufficient to establish that either victim sustained adequate fear to support a robbery conviction. The argument misses the mark. The People are required to prove only that the taking was accomplished by force *or* fear. (*People v. Russell* (1953) 118 Cal.App.2d 136, 138.) Because substantial evidence supports the verdicts on the theory of a taking by force, there is no need to determine whether the verdicts can also be supported on a theory of a taking by fear. (See, e.g., *People v. Memro* (1985) 38 Cal.3d 658, 695.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.